We'll now call Sczesny v. Murphy, case number 241676. When you're ready, you may approach counsel for appellant and let us know how much time, if any, you'd like to reserve for rebuttal. Yes, Judge. My name is Dana Weaver. May it please the court, I'd like to reserve five minutes for rebuttal. Sure. Thank you. Good morning, judges. So this case is not moot because there is still a live and active controversy. This case involves the challenge to Governor Murphy's executive order 283, which was a booster COVID-19 vaccine mandate that was put in place in New Jersey. I think it's important from the outset to note that Governor Murphy's executive order 283 is completely and totally separate and apart from the federal government's Medicaid and Medicare mandate, which is referenced heavily in the state's brief, but is really not relevant to the mandate itself. So this case was originally brought to prevent the nurses who are challenging the mandate from being terminated. They were all fully vaccinated nurses and they were terminated just because they did not receive the booster examinations. We immediately moved for a preliminary injunction. It came up to the Third Circuit. We argued it. It became moot on appeal a couple of, I think, a couple of days before a decision was expected to be issued. We remanded and now the case has been dismissed as moot. Our argument is essentially that the entire case was brought to begin with to prevent these nurses from being terminated. That was the injury. Well, Ms. Higgins resigned. Ms. Higgins resigned. So can you address how that might make a difference? I don't think it makes a material difference because ultimately all of these plaintiffs were, they were separated from their jobs because of executive order 283. The fact that three of the plaintiffs were actually terminated and have an adverse termination on their record, I think, makes their claims a little more strong in terms of the injury in fact that exists. But in addition to the injury, in fact, from the termination, all of these nurses also suffered an injury, in fact, from the unconstitutional condition that was put on their employment from the existence of the mandate from the get-go. The fact that that injury, in fact, ceased existing when the mandate was rescinded doesn't change the fact that the injury, in fact, was actually sustained. So can we just talk about, you know, I mean, as I understand mootness, the goal is you have to have standing at the beginning of the suit and then you lose standing somewhere along the line. That's the first step in mootness. And then the next step is, well, wait, that's not good enough to moot a case. You have to prove the party wanting to assert mootness has to prove that something else happened, like maybe it wasn't voluntary cessation or that it wasn't capable of repetition yet evading review. It sounds to me that you've kind of said, look, if the suit was filed today, you might not have standing. None of your clients would have standing. And if that's the case, then at least that first part of mootness is not where the action is. It's going to turn into these exceptions. Is there voluntary cessation or is it capable of repetition yet evading review? So the first part of my question is, that was really a statement. Do you agree with how I traced that out? There's no standing today. But the question, that's not the reason the case is out, though. You can lose standing during a case if someone voluntarily, if an official voluntarily stops or is capable of repetition evading review. So where are you? You think there is no standing today, right? No, Judge. I would characterize it differently. I actually think that we would satisfy the mootness exceptions, but I don't think that the court needs to get to that analysis to determine if it has jurisdiction. Because the questions of mootness and the questions of case and controversy under Article 3 are really very intertwined here. So our position is that we've never lost the case in controversy. We never lost standing. Well, you kind of lost the redressability prong. I don't think that... What order, like if the suit was filed today, right? What order, when the executive order is not in effect, right? What order could this, and people have already left their jobs, every client's not in their prior job. What order could this court give, like a declaratory judgment about something that's not in effect and about jobs that people no longer have? That's not what courts do. And so I might be with you that the injury remains. You lost your job based on this and you didn't get your job back. I'm fine. That part goes through. I'm fine with the fairly traceable causation. You lost your job because the influence of the executive order on the employers down the road. But if we started right now today, I don't see how... If today was the first day of your lawsuit, I don't know how it's redressable. I don't know what we could do. We wouldn't give a declaratory judgment on people who long lost their jobs on an executive order that's rescinded. We would say that's just, there's no active case or controversy, wouldn't we? We do declaratory judgment on that? So, Your Honor, we are seeking declaratory judgment here, and the case is brought under Section 1983. And while declaratory judgment is within the discretion of the court, the district court here did not do that analysis because it did find that it was moot. Our position is that there is still a case in controversy. There was an injury in fact, and an injury in fact, and existing and continuing to exist injury in fact, means that the case is still alive. There's still an active controversy. There's still adversarial interest, and that really nothing has changed. The fact that the mandate was withdrawn, the injury was inflicted in April 22 and still exists. I'm actually with you on the injury, but as I count the standing doctrine, there's three prongs. Injury is prong one, causation is prong two, and redressability is prong three. A hundred percent, at least speaking only for me, I'm with you on the injury being there. They lost their jobs, they didn't get them back, they weren't compensated for it, so that's an open injury. But certain injuries would just get to a certain point in time when the action is not against the employer, but the action is against someone else who wasn't their employer. What do we do? We can't say to the employer, hey, compensate them because they aren't the party. We can't say to the governor, oh, please make a new executive order to put them back in their jobs. That's not what courts do. So I guess maybe we're just going back and forth here, and we have a disagreement. But I don't see redressability, and I'd love to hear you, if you disagree with me, just tell me why is this something that is redressable at this point in time? Courts typically don't deal with this. Judge, I understand your question better now. So while this would not be a hundred percent redressable, I think it's important to note that one of the issues that we have in this case is that this is an extremely unusual and perhaps unique piece of executive order, piece of law. It was a state actor that ordered private corporations to order their private employees to undergo a medical procedure. There is nothing else like that that has ever happened. So it's not easy to figure out how that would be redressable because it doesn't happen. It hasn't happened before. So I agree that it is not a hundred percent redressable because what we had was we had a state government that had a private actor inflict the injury on the plaintiffs. However, these nurses, for as long as they continue their careers, every time they apply for a job, they're going to have to check the box that says they were terminated. And so while it's not a hundred percent redressable, judicial recognition that there were constitutional rights at issue here will help redress the injury that these nurses have suffered for the rest of their careers because this is a presently existing injury. If they reflect the fact that their employment records now have this adverse termination due to not complying with the government order is an existing injury that will continue to exist if not redressed and can be redressed by this court. With regard to the voluntary sensation doctrine, we think here, I don't think there's really a dispute, the fact that this was voluntarily seized. In addition to that, as you know, the record has the email, the internal email saying that the state reserves the right to reinstate a COVID-19 vaccine mandate. But I think that perhaps one of the most important things with regard to the voluntary sensation here is that it is capable of happening again very easily. And the question of what is the legal controversy that would repeat itself, the district court below, and I know that the Third Circuit has dismissed a lot of the COVID-era cases as moot. I think that this one is different because of the employment. But in addition to that, it is the mechanism by which this was implemented that I think is the legal controversy. And that is what is capable of repetition. And that is what needs to be addressed by the judiciary. It's not necessarily the specific COVID-19 shot, although certain facts concerning that, of course, may be repeated. But it's really the mechanism. It's can the state government recruit private employers to have private employees undergo a medical procedure based on the order of a single person? But the, you know, the capable of repetition question isn't about whether some medical procedure will be required for employees of, for anyone, right? It's about whether this particular issue will recur, right? So will there be an executive order again that requires the COVID vaccination in this way? And so why is that likely to recur? So I think that that is a narrow framing of the legal issue. I think that at a higher level, the legal issue is really whether the medical procedure can be forced. I understand that the COVID-19 specific vaccine might not come up exactly again. And there's new iterations of the of the vaccines, I think, every year now. That level of abstraction is what was applied in Clark. And aren't we bound by that precedent as to what level the question, you know, a lot of legal issues are about how narrowly or how broadly or what level of abstraction these these issues are considered. And it seems like that is our precedent. So I agree with you. And there's, of course, the similarities between Clark. But I think probably the biggest difference between Clark in this case is when the mandates went into effect. Clark was in the heat of the beginning of the pandemic. And it was it was very much while the pandemic was in its heat. This executive order wasn't put into effect until April 22. And so I think the conditions that were facing the state and the governor at that point in time were very different than what we were facing in 2020, 2021. I'm not sure if I addressed your question. Thank you. Thank you. Well, we'll hear from you on the bottom. Good morning, Your Honors. May it please the court. Francis Baker for the state. The district court properly dismissed appellant's amended complaint because all of their claims seeking prospective declaratory and injunctive relief only are indeed moot without exception. There is no effectual relief whatsoever available to these appellants from the state. Right. And we can start first with the injunctive relief. Right. So the executive orders that are at issue here, executive orders 283, 90 and 94, were all wholly rescinded in June of 2020. And doesn't that really take your case into a different space? I mean, I mean, when when something is rescinded, that just screams voluntary cessation. We've got a voluntary cessation problem because voluntary cessation is designed exactly to prolong a case or controversy when a defendant says, oh, the thing that's bothering you, I'll pull it back. And I don't want any judicial order in any way preventing me from putting that back in place whenever I want. And so it seems that by focusing on the rescission, you're steering yourself headlong into a voluntary cessation problem. Why isn't this classic voluntary cessation exception? Sure. Yeah, I think we have to contend with voluntary cessation no matter what in the factual circumstances that we have here. So I think it's clear that, you know, voluntary cessation, we are looking in the first instance, as you say, Your Honor, to why did the challenged action get rescinded here? And here it's very clear that it was not in response to litigation. And we know that for a couple of reasons. First, we can look to the timing. Right. The particular executive orders at issue here, at least initially 283, was issued in January of 2022. Appellants filed their complaint in April of 2022. And then the actual executive orders themselves were not rescinded by operation of Executive Order 332 until June of 2023, over a year. But I mean, the other thing is this, is you're focusing on kind of subjective nature of rescission. But as I understand it, the test for voluntary cessation focuses on whether the wrongful behavior has ceased and could not reasonably expected to reoccur. And the governor reinstated these orders once COVID spiked again. And so it seems that rescinded them might not have had anything to do with this litigation. That's fine. That's the subjective point. But the test is more of an objective test. It says, could it reasonably expected to reoccur? And we've got one instance of reoccurrence. And so this is a really heavy burden. What do you have to show that there won't be a second instance of reoccurrence? Because we've already got one. And I don't know of a single voluntary cessation case that has beat the voluntary cessation exception when it's already reoccurred once. And the play is, OK, we stopped it. We started it again. But trust us, we'll never, ever, under any circumstances, restart the motor a second time. So, I mean, maybe you know of cases that are different than this, but it's a heavy burden. And you've already restarted the engine on the mandate one time. And you have to show up and say, no, you can trust us. We'll never, ever do it again. Why can we trust you? Well, so I think for the sort of first aspect of the analysis is, you know, why was this rescinded? Was it to scuttle the lawsuit? I think the answer is no. But as Your Honor correctly mentioned, the other part of the analysis is, are the defendants just going to turn around and go back to their old ways, right? As the case law has it. And I think it's pretty clear here that that's not the case. And we know that for a couple of different reasons. Yes, there was another declaration of a public health emergency after a spike in the identified variants of COVID. I don't believe that the particular executive orders that were challenged here were a re-implementation of a prior order that was previously rescinded, though. I think that this was its own unique executive order that was issued in response to that particular historical event. OK, that strikes me as a response to form, not substance, right? It wasn't the same executive order we gave it. We gave it a new thing. But you want the mandate was the same, right? Am I misunderstanding the mandate? It was the same as the prior executive order. It required that covered employees in covered health care settings remain up to date with their COVID vaccines, the approved COVID vaccines. So and again, that was in response to a spike in the community and in health care. So if there's another spike, I mean, I think in order to beat voluntary cessation, you have to come forth with convincing evidence that if there's another spike, there will be no new executive order in response to that spike. If you don't have that, then as I read it, the case law says the voluntary cessation exception keeps this as a live case for controversy because of that potential reality. We still have a need to resolve this case. So so so is it your position? Is it the governor's position that if there is another spike of a COVID variant, there will be no such order? Is that I didn't see that in the briefing. Well, I think we know that, too, from the occurrence of several spikes and variants that have been identified since that time. Right. So the the executive executive orders here were rescinded in June twenty twenty three. And in that time, we've identified multiple other variants of COVID that have resulted in surges in cases. But we are in a completely different landscape now than we were then. We have increased vaccination rates that we didn't have at the time of the issuance and rescission. We have infection induced immunity in the community. We also have the increased availability of approved therapeutics and antiretrovirals to treat COVID. We also have a better understanding, too, of how it is that the virus spreads. We are in a different ballpark. Right. And this court in Clark and County of Butler recognize that as well. And in fact, they think that the analysis in Clark is really helpful here because it scopes the appropriate analysis. Right. Like so the court said it isn't necessary to sustain this controversy that we'd be confronted with the same exact executive order that's at issue here. But neither is it sufficient for there to be a risk of any old executive order in response to any undifferentiated public health emergency in order to establish an ongoing controversy. What we're really looking at is whether or not there is a substantial likelihood or a likelihood of this of the same controversy presenting itself in a way that that is going to affect these same appellants again. So so can I just I just ask another part that was embedded in my first question, which was, are you aware of any case that has beat the voluntary cessation doctrine where a practice was stopped for a time, restarted? And then the the the court said, yeah, we're convinced that after one restart, there won't be any more. I haven't seen the cases. I haven't I haven't searched every I haven't scoured every single case ever on mootness. But a case like that would really help you. It seems like you're kind of asking us to be the first court that I'm aware of that has ever said stop, start, promise of not restarting, diminished likelihood of restarting is still good enough for voluntary cessation. Almost always when you get a restart, we say the heavy burden can't be met. Yeah, I don't help your case a lot if you had one. That's what I'm saying. Yeah, I'm not aware of any as I stand here, certainly. And again, I think that part of the distinguishing feature there is the fact that the particular executive orders at issue here were were different than the executive orders that came before. Right. The executive orders that came before were in response to the initial presentation of the of the pandemic. And then the subsequent ones were issued in response to a as far as I can recall, the first identified variant. Right. So this was still very much a part of the initial presentation of the pandemic. It was a continuation of that. But it's it's been now, I think, maybe five years since the first identified case of covid. And it's been almost two years, a year and a half since the rescission of these particular executive orders. And no, no indication that we are looking at re-implementing the same or similar executive orders requiring vaccinations or requiring covered health care settings to maintain vaccinations. What would a substantially same controversy be? Right. So I think probably it doesn't need to hew exactly to the same requirements or parameters of the executive orders that are at issue here. Surely, you know, it would permit of some extrapolation. I'm not really sure what the the the boundaries of that would be. You know, certainly if there were to be another executive order requiring covered health care settings to to maintain, you know, a policy requiring that covered workers stay up to date with or receive a vaccine, then, you know, surely there would be, I think, a similar substantial controversy there. But there would also be an opportunity to litigate that requirement at that time. Right. So that's that's the other aspect of this, too, is the capable of repetition piece of it. For all the reasons that I've expressed in the state's brief, it seems very clear, as this court indicated again in both Clark and County Butler, that we're not looking at being faced with the same extreme pandemic restrictions is, I think, kind of really how the Clark court conceptualized that test of the absolutely clear, the substantial likelihood, substantial similarity. You know, we could look as recently to August of twenty twenty four, right. The World Health Organization declared impacts of global public health emergency. And that's a disease that's caused by a virus for which there is a vaccine available. And Clark, the way they conceived of it was the setting, the covid setting and then the response. And I think you've mostly addressed the covid setting here. So I'm just trying to understand, but what would the substantially same controversy be? Would it be. A repetition of those in your in your for your party's position, a represent a repetition of the conditions at the time it was first instituted, I'm assuming is if you were to conceive of what it would be. And you're saying that that's not meant. But I'm not sure what you're saying. The second one would be, would it would it be any vaccine? Would it be these particular covid vaccines, for instance? I believe it was Ms. Rumsfeld or the one who was pregnant at the time had concerns about the fact that since it was such an early vaccine, it had not been adequately tested on pregnant women. And, you know, is that part of the same controversy? I'm just trying to understand what your position is as far as what is substantially the same. Right. And that's where it gets difficult because there are so many variables. Right. We don't we don't know if there's to be another public health emergency of some sort. There are so many variables that it's just far too tenuous for us to to say that, you know, the state is going to be looking to reimplement anything that that that looks like the types of restrictions at issue here. It feels that your answer, Judge Chung, almost flips the burden, right? You say it's far too tenuous for us to predict what happens. But to beat voluntary cessation, the heavy burden is on the state. So with all of those variables, you have to come and say, hi, in substantially similar circumstances, we won't do the same thing. Otherwise, this case has continued vitality under the mootness preservation exceptions. So, I mean, I think your point's a good one, but but but I think it I think it flips the burden and it's trying to use the burden in your own favor. And I think the way that the voluntary cessation doctrine works is it says, hey, if the future is too hard to predict, then the heavy burden to meet the voluntary cessation exception just isn't there. And I just heard you say that the future is too hard to predict. And that feels like then meeting the burden of voluntary cessation can't be done, at least right now. What do you say? Yeah. And the burden for voluntary cessation is on the state. That's exactly right. It is a bit difficult in as much as it's essentially it seems almost trying to prove a negative. It's a hard it's a hard exception. Right. If you if the order would have lasted for 60 days and expired, you get the benefit of our rule in Clark, which says when something expires on its own terms. I think it's Clark Butler. But but there's a heavy presumption that it won't be repeated. Strangely, when you stop it yourself, the way the case law breaks, you're you're you're right in the heart of getting the heavy burden back. We back that burden down when something expires on its own terms, rightly or wrongly. But we did that. But but we've got this weird quirk now where if you rescind it yourself, you've got a heavy burden. It's hard. It's a little weird because if the governor were to structure the order that says for the next 180 days, this is what I'm asking. You'd be in the heartland of our case law that says you've met it didn't. And so when that's left to discretion, that discretion seems to make you have a harder burden. Strange how the case law breaks at one level. But but but that's my reading of it. Yeah, I still read Clark, though, as much as it was decided after West Virginia and these other cases. I think he's absolutely clear language as as setting the context and the applicable analysis. And yes, those those that case, and I believe County Butler as well, those concerned executive orders that were, as I think the case said, expired by their own terms. I don't know whether or not the specifics of those particular executive orders, what it means expired on their own terms versus what we have here. I would just, again, emphasize sort of the timeline and the amount of time. But the timing and again, the the what we've seen happen since the rescission, I think, is how the state is able to demonstrate, hopefully to the court's satisfaction that that it is absolutely clear. Quickly, even if this case were not moved, what is your argument about redressability given the employer's option to terminate plaintiffs? But but that they were not required to terminate plaintiffs to follow the EO? Right. Yeah. So that that's that's another aspect to this. Right. It's another spin on on mootness. Obviously, in the state's briefing, we focus very much on the availability of effectual relief. But if you were to approach it more from the from the sort of the tripartite standing analysis that was discussed during the colloquy before, there is, I think, a redressability issue as well. Because in order from this court that or from the district court that the executive orders were in any way unconstitutional or illegal, wouldn't actually afford them any of the particular relief, certainly that they're relying upon for the ongoing existence of the case or controversy here. Because, again, as your honor mentioned, the executive orders themselves did not actually require any private health setting to terminate anyone. It didn't even require termination be a form of discipline that private employers use. It certainly said that as part of the disciplinary process that employers were required to have, they could terminate. But but they didn't need to in general or in any particular case here. And in order, you know, a declaratory judgment on the constitutionality of the executive orders wouldn't have the effect, certainly, of of requiring that Hunterton offer these appellants their jobs back. And nor would it really be effective at reshaping the perspective of future employers that that's beyond the power of any court to be able to tell future employers how it is they should view a termination of of of an employee of an at will employee, you know. Thank you very much. Thank you. I think you're on for five minutes, five minutes that you reserved. Yes. So I just wanted to touch on the voluntary cessation doctrine as has been recognized. It is a heavy burden for the state who sees this doing something and then relies on the voluntary cessation doctrine. And here the state hasn't made any representation that they're not going to reenact the mandate. This is was remanded from the appellate from the Third Circuit went back to the district court. There was another complaint filed. There was a chance to amend. There was a I'm sorry, a chance to answer. There was a motion to dismiss. And at no point in time has anyone from the state ever said we're not going to put this mandate back in place. So it's hard to see how the state could meet its burden of showing that it absolutely is clear that will not recur when they've made no such representation. And in fact, documents from the state show that they reserve the right to reinstate that mandate. What do you have a record site for the documents from the state saying that they reserve the right to reinstate the mandate? Your Honor, I do not have it right in front of me. Do you know what document it is? It is, Your Honor. It's the email from the DOH. It was it was I think it was from a different department of the state. But it was essentially an email that was sent out saying that we reserve we're lifting the mandate, but we reserve the right to reinstate it. Well, that was as an employer. Yes. Yes, that is correct. Pardon me. I miss that. I said that was as an employer. Oh, yes. Pursuant to the same executive order, however. So the same executive order 283, because the public employees were also subject to it. If they were covered, had been rescinded and left it open to employers to decide whether or not to keep it. And so the employer said, maybe we will at some point. So it was not the state saying the state would reserve the right to reimpose the executive order. I believe it was a state employee who sent out an email saying that they reserved the right to reinstate the COVID-19 vaccine mandate. It wasn't Governor Murphy. Right. As an employer, because that was permissible under the rescission. I actually I'm not sure about whether it was as an it was as an employer. That is correct. But I think that it was as an employer pursuant to executive order 283. I believe that they were linked together there. But that does bring up another point that I did want to raise concerning the fact that this executive order went into place. It mandated that this whole system be built so that these private employers could implement the mandate. And then when the executive order was rescinded, there was the state went out of the way to say all of those all that infrastructure that you put in place to implement this mandate. You can keep that in place. And so we argue that that's another continuing effect of the mandate. We have no idea if the state ever told private employers that it was actually rescinded. We don't we just don't know that information hasn't been provided as to what the state told private employers in terms of whether they needed to dismantle the existing infrastructure or whether maybe the state even encouraged it to stay in place. We just don't know that. So it can't be clear that it won't recur when the infrastructure still exists. Thank you. Thank you very much. We will we will take a brief recess.